# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARTY FITZGERALD, | Case No. 3:17-CV-0278-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| v. | |
| LPN GREG MARTIN, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Marty Fitzgerald ("Fitzgerald") against Defendants Romeo Aranas ("Aranas"), Renee Baker ("Baker"), Gloria Carpenter ("Carpenter"), James Dzurenda ("Dzurenda"), Dawn Jones ("Jones"), Michael Koehn ("Koehn"), and Greg Martin ("Martin") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 103, 105.)[2] Fitzgerald opposed the motion, (ECF No. 146), and Defendants replied. (ECF No. 148.) Also pending before the Court are Fitzgerald's motion for preliminary injunction, (ECF No. 128), motion for substitution of parties, (ECF No. 131), and Fitzgerald's cross-motion for summary judgment, (ECF No. 149.)[3]

For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 103), be granted, Fitzgerald's motions for preliminary injunction and for substitution of parties, (ECF Nos. 128, 131), be denied as moot, and Fitzgerald's cross-motion for summary judgment, (ECF No. 149), be denied as untimely.

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 105 consists of Fitzgerald's medical records filed under seal.

[3]    Defendants opposed the motion for preliminary injunction, (ECF Nos. 133, 135), and Fitzgerald replied, (ECF No. 139). Defendants opposed the motion for substitution, (ECF No. 138), and Fitzgerald replied, (ECF No. 144). The Court ordered Defendants not respond to the cross-motion for summary judgment, unless and until ordered to do so. (ECF No. 150.)

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Fitzgerald is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). (ECF No. 152.) On May 1, 2017, Fitzgerald initiated this action by filing an application to proceed *in forma pauperis* and a civil rights complaint pursuant to 42 U.S.C. § 1983, asserting claims related to alleged delay in treatment of his Hepatitis-C ("Hep-C" or "HCV") and spinal conditions while in the custody of the NDOC. (ECF No. 1-1.) On April 13, 2018, Fitzgerald filed a second amended complaint, which is the operative complaint in this case. (ECF No. 14.) The District Court screened the second amended complaint pursuant to 28 U.S.C. § 1915A and Fitzgerald was permitted to proceed on an Eighth Amendment claim for deliberate indifference to serious medical needs relating to an alleged delay in treatment of his Hep-C and spinal conditions, and a Fourteenth Amendment claim for equal protection against Defendants Aranas, Koehn, Dzurenda, Baker, Jones, Carpenter, and Martin. (ECF No. 21.)

The facts as alleged in the second amended complaint are summarized as follows. First, Fitzgerald alleges that he was diagnosed with two damaged discs in his neck and a compression fracture in his back, spinal stenosis, and cervical arthritis. (ECF No. 14 at 4.) Fitzgerald also alleges that because his Hepatitis B has not been treated, it now has risen to the level of Hep-C. (*Id.* at 5.) Fitzgerald then alleges that these medical conditions are causing Fitzgerald severe pain and suffering. (*Id.* at 4.) Per Fitzgerald, a specialist recommended surgery for Fitzgerald's spine, but he did not receive surgery, which could lead to further injury and paralysis. (*Id.* at 5.) Fitzgerald also alleges that he is suffering increased liver damage due to the lack of treatment for his hepatitis. (*Id.*) Fitzgerald alleges that each of the Defendants has denied him the treatments needed for his spinal condition and hepatitis and are interfering with the specialist's medical care. (*Id.* at 7, 8.)

However, regarding Fitzgerald's Hep-C, the authenticated medical records submitted with respect to the motion for summary judgment reflect that Fitzgerald has been enrolled in the Chronic Disease Clinic for monitoring and treatment of his Hep-C since at least 2015. (ECF No. 105-7 (sealed).) On September 28, 2016, an abdominal

ultrasound was ordered by the physicians, and documented in a Chronic Disease Clinic follow-up. (*Id.* at 9 (sealed).) The abdominal ultrasound, performed on October 7, 2016, shows mild splenomegaly, no evidence of cholelithiasis or cholecystitis, unremarkable liver, gallbladder, and kidneys, and no abdominal ascites. (ECF No. 105-8 (sealed).) Fitzgerald's Hep-C was regularly monitored through the Chronic Disease Clinic. (*See* ECF No. 105-7 (sealed).)

Moreover, on May 14, 2019, physicians ordered Fitzgerald's Hep-C be treated with Direct Acting Antiviral ("DAA") treatment. (ECF No. 105-9 (sealed).) An abdominal ultrasound performed on November 8, 2019, showed normal echogenicity without evidence of intrahepatic or extrahepatic biliary dilation of the liver, no focal hepatic masses were identified, unremarkable gallbladder, kidneys, spleen, and pancreas, and no abdominal ascites. (ECF No. 105-11 (sealed).) Bloodwork performed on May 18, 2021, shows that HCV was not detected in Fitzgerald's system. (ECF No. 105-10 (sealed).)

As to Fitzgerald's neck/back pain, the authenticated medical records reflect that a CT scan performed in 2012 showed a negative study with "no boney spinal stenosis" shown. (ECF No. 103-3 at 7.) Defendant Koehn ordered cervical x-rays on September 16, 2015. (ECF No. 105-4 (sealed).) The x-rays showed only degenerative changes, but no evidence to support cervical spinal stenosis, compression fractures, or nerve or neurological impairment. (ECF No. 103-3 at 5, 7.) On October 25, 2016, Defendant Martin ordered x-rays of Fitzgerald's thoracic spine and cervical spine. (ECF No. 105-3 (sealed).) The x-rays of the thoracic spine showed "mild age indeterminant compression fractures in the lower thoracic spine" and the x-rays of the cervical spine showed "mild degenerative endplate changes at C5-C6. No acute fracture." (*Id.*) X-rays taken on June 30, 2017, showed mild spondylosis and mild degenerative changes. (ECF No. 105-2 at 2 (sealed).) Fitzgerald was seen by Dr. Long, a local specialist, who recommended observation, not surgery as of September 6, 2017. (*Id.*) Fitzgerald was seen by Dr. Long again on November 1, 2017, with the same recommendation for observation. (*Id.* at 3-4.)

///

1    On December 15, 2021, Defendants filed the instant motion for summary judgment
2  arguing: (1) Defendants were not deliberately indifferent to Fitzgerald's serious medical
3  needs; (2) Fitzgerald was not harmed by any alleged delay in treatment; (3) most of the
4  Defendants were not treating physicians and thus did not personally participant in any
5  alleged constitutional violation; and (5) all Defendants are entitled to qualified immunity.
6  (ECF No. 103.)

7  **II.    LEGAL STANDARDS**

8    "The court shall grant summary judgment if the movant shows that there is no
9  genuine dispute as to any material fact and the movant is entitled to judgment as a matter
10  of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The
11  substantive law applicable to the claim or claims determines which facts are material.
12  *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477
13  U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of
14  the suit can preclude summary judgment, and factual disputes that are irrelevant are not
15  material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine"
16  only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at
17  248.

18    The parties subject to a motion for summary judgment must: (1) cite facts from the
19  record, including but not limited to depositions, documents, and declarations, and then
20  (2) "show[] that the materials cited do not establish the absence or presence of a genuine
21  dispute, or that an adverse party cannot produce admissible evidence to support the fact."
22  Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be
23  authenticated, and if only personal knowledge authenticates a document (i.e., even a
24  review of the contents of the document would not prove that it is authentic), an affidavit
25  attesting to its authenticity must be attached to the submitted document. *Las Vegas
26  Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,
27  speculative opinions, pleading allegations, or other assertions uncorroborated by facts
28  are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the non-moving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the non-moving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the non-moving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the non-moving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The non-moving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the non-moving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the non-moving party to "show more than the mere existence of

a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his contentions in motions and pleadings may be considered as evidence to meet his burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a non-moving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III.     DISCUSSION

### A.     Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical

needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due

care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1. Analysis

Starting with the objective element, the parties agree that Fitzgerald's Hep-C and neck/back pain constitute a "serious medical need." However, Defendants argue summary judgment should be granted because Fitzgerald cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to treatment of Fitzgerald's Hep-C or neck/back conditions. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to the prisoner's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires the plaintiff to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

///

Here, Defendants submitted authenticated evidence regarding the medical treatment Fitzgerald received related to his Hep-C and neck/back conditions. (*See* ECF Nos. 105-1, 105-2, 105-3, 105-4, 105-5, 105-6, 105-7, 105-8, 105-9, 105-10, 105-11 (sealed).) Starting with Fitzgerald's Hep-C, the authenticated and undisputed medical evidence establishes that Fitzgerald was first enrolled in the Chronic Disease Clinic beginning in at least 2015. (ECF Nos. 105-7 (sealed).) Fitzgerald received routine care through the Chronic Disease Clinic for his Hep-C. (*Id.*) In response to a grievance regarding his Hep-C, Fitzgerald was advised to submit a medical kite requesting treatment for his Hep-C in 2016. (ECF No. 103-2.) On September 28, 2016, an abdominal ultrasound was ordered by physicians, and documented in a Chronic Disease Clinic follow-up. (ECF No. 105-7 at 9 (sealed).) The abdominal ultrasound, performed on October 7, 2016, showed mild splenomegaly, no evidence of cholelithiasis or cholecystitis, unremarkable liver, gallbladder, and kidneys, and no abdominal ascites. (ECF No. 105-8 (sealed).) Fitzgerald's Hep-C was regularly monitored through the Chronic Disease Clinic. (*See* ECF No. 105-7 (sealed).)

On May 14, 2019, physicians ordered that Fitzgerald's Hep-C be treated with Direct Acting Antiviral ("DAA") treatment. (ECF No. 105-9 (sealed).) An abdominal ultrasound performed on November 8, 2019, showed normal echogenicity without evidence of intrahepatic or extrahepatic biliary dilation of the liver, no focal hepatic masses were identified, unremarkable gallbladder, kidneys, spleen, and pancreas, and no abdominal ascites. (ECF No. 105-11 (sealed).) Bloodwork performed on May 18, 2021, shows that HCV was not detected in Fitzgerald's system. (ECF No. 105-10 (sealed).)

As to Fitzgerald's neck/back pain, the authenticated and undisputed medical records reflect that a CT scan performed in 2012 showed a negative study with "no boney spinal stenosis" shown. (ECF No. 103-3 at 7.) Defendant Koehn ordered cervical x-rays on September 16, 2015. (ECF No. 105-4 (sealed).) The x-rays showed only degenerative changes, but no evidence to support cervical spinal stenosis, compression fractures, or nerve or neurological impairment. (ECF No. 103-3 at 5, 7.) In response to a grievance

related to his neck/back pain, Defendant Carpenter stated:

> Your x-ray dated 9/18/15 only shows degenerative changes, which can be expected to a certain degree with individuals your age. There is no evidence to support "cervical spinal stenosis, compression fractures or nerve impairment["] on your x-ray or at your medical appointments. I encourage you to do gentle stretching exercises as they have been proven effective for back and neck pain. Walking at an easy pace can also be very beneficial. If you would like to try an IBU or Tylenol pain pack to increase your comfort, please submit a medical kite and we will be glad to see you again at sick call.

(ECF No. 103-3 at 5.)

On October 25, 2016, Defendant Martin ordered x-rays of Fitzgerald's thoracic spine and cervical spine. (ECF No. 105-3 (sealed).) The x-rays of the thoracic spine showed "mild age indeterminant compression fractures in the lower thoracic spine" and the x-rays of the cervical spine showed "mild degenerative endplate changes at C5-C6. No acute fracture." (*Id.*) X-rays taken on June 30, 2017, showed mild spondylosis and mild degenerative changes. (ECF No. 105-2 at 2 (sealed).) Fitzgerald was seen by Dr. Long, a local specialist, who recommended observation, not surgery as of September 6, 2017. (*Id.*) Fitzgerald was seen by Dr. Long again on November 1, 2017, with the same recommendation for observation. (*Id.* at 3-4.)

Defendant Jones, an NDOC nurse, filed a declaration in support of the motion for summary judgment, stating that she did not determine whether Fitzgerald qualified for Hep-C treatment and in relation to his neck/spine issue, she notified him that radiology did not support his claim, as there was nothing in the x-ray supporting neurological impairment or weakness. (ECF No. 103-4 at 2.) Finally, she stated that as a nurse, she had no authority to recommend any specific treatment for Fitzgerald. (*Id.* at 3.)

Defendant Aranas, former NDOC Medical Director, filed a declaration in support of the motion for summary judgment, stating that his only involvement or interaction with Fitzgerald was as a grievance responder and he did not examine or treat Fitzgerald in any way. (ECF No. 103-5.)

Defendant Dzurenda, former NDOC Director, and Defendant Baker, former NDOC Warden at the Ely State Prison ("ESP"), filed nearly identical declarations in support of

the motion for summary judgment, stating that they had no contact with Fitzgerald, were unaware of his condition, were not part of any committee that could have ordered treatment for Fitzgerald, did not formulate Medical Directives, and had no authority to order treatment for HCV to Fitzgerald or any other inmate. (ECF Nos. 103-6, 103-7.)

Defendant Martin, former Advanced Practice Registered Nurse for the NDOC, filed a declaration in support of the motion for summary judgment, stating that he referred Fitzgerald to Dr. Long, an orthopedic surgeon to evaluate his neck pain. He did not deny medical care to Fitzgerald. He made referrals to the medical review panel on Fitzgerald's behalf. He never ordered treatment for Fitzgerald that was rejected for any reason. He did not order DAA treatment for Fitzgerald, as he never noted: (1) spider angiomata (vascular lesions on the chest and body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); or (5) jaundice (yellow discoloration of the skin and mucous membranes, upon examination). (ECF No. 103-8.)

Defendant Carpenter, former Director of Nursing Services for NDOC at ESP, filed a declaration in support of the motion for summary judgment, stating that she never determined whether Fitzgerald qualified for Hep-C treatment and as a Nurse she did not personally deny treatment to inmates, as those decisions were made by the Hep-C Review Panel or Utilization Review Panel. Carpenter's only involvement with Fitzgerald was responding to his grievance, wherein she notified Fitzgerald that pursuant to the Medical Directive he was not prioritized for treatment as he did not meet the criteria for Hep-C treatment in 2016. (ECF No. 103-9.)

Defendant Koehn, former physician for NDOC at ESP, filed a declaration in support of the motion for summary judgment, stating that he referred Fitzgerald for x-rays in 2015 to evaluate his claims of neck pain. He did not deny medical care to Fitzgerald. He made referrals to the medical review panel on Fitzgerald's behalf. He never ordered treatment for Fitzgerald that was rejected for any reason. He did not order DAA treatment for Fitzgerald, as he never noted: (1) spider angiomata (vascular lesions on the chest and

body); (2) palmar erythema (reddening of the palms); (3) gynecomastia (increase in breast gland size); (4) ascites (accumulation of fluid in the abdomen); or (5) jaundice (yellow discoloration of the skin and mucous membranes, upon examination). (ECF No. 103-10.)

Defendant Minev, the Medical Director for the NDOC, reviewed Fitzgerald's medical records and attested to the following: Fitzgerald suffered from chronic Hep-C. Fitzgerald did not exhibit any symptoms of decreased liver function, namely: (1) spider angiomata; (2) palmar erythema; (3) gynecomastia; (4) ascites; or (5) jaundice. Fitzgerald's APRI score, based on blood results in November of 2018 was 0.99. Minev "almost always declined to recommend an NDOC inmate with Chronic Hepatitis-C, who has an APRI score near or below 1.0, for advanced forms of Chronic Hepatitis-C treatment due to the risk that drug intervention may cause…" Based on his APRI score and lack of clinical signs indicating decreased liver function, Fitzgerald was not a candidate for Hep-C treatment at the time of his grievance. Fitzgerald has since received the DAA treatment and currently shows no HCV in his system. (ECF No. 103-11.)

Based on the above, Defendants have submitted authenticated evidence that establishes they affirmatively monitored and ultimately treated Fitzgerald's Hep-C and monitored and treated his neck/back pain. Therefore, Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Fitzgerald to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

In Fitzgerald's response to the motion for summary judgment, Fitzgerald claims in relation to his "congenital spinal stenosis" that he is entitled to "damages for an alleged delay in a neurosurgeon recommendation which would suggest surgery to treat the cause, not merely the symptoms" of his condition. (ECF No. 146 at 9, 19.) As to his Hep-C claim, Fitzgerald acknowledges that he has received treatment, but asserts damages

should be assessed for denial and delay of treatment. (*Id.*) Fitzgerald also takes issue with what he describes as not having the "benefit of any formal discovery" and "deprival of meaningful follow-up to [] medical records in discovery." (*Id.* at 1, 19.)

Fitzgerald's contention that his case did not benefit from "any formal discovery" is patently false. Fitzgerald's case was one of several Hep-C cases that was consolidated into a class action for the specific purpose of conducting discovery related to Hep-C treatment within the NDOC (with such discovery conducted by counsel appointed for that specific purpose). (ECF No. 46; *See also, In Re HCV Prison Litigation*, 3:19-CV-00577-MMD-CLB.) Further, this Court has taken an active role in ensuring Fitzgerald has been provided ample discovery, as well as granting the <u>rare</u> opportunity to allow Fitzgerald to possess all his medical records in his cell. (ECF No. 141.)

Despite Fitzgerald's contention that he is entitled to damages due to alleged denial and delay in providing him Hep-C treatment, he does not present any argument or evidence that he was harmed by any such delay or that the treatment he was provided was otherwise improper. Where an inmate alleges that delay of medical treatment evinces deliberate indifference, he must show that the delay led to further injury. *See Hallett,* 296 F.3d at 745-46. In support of his opposition to the motion for summary judgment, Fitzgerald submitted a declaration regarding his Hep-C. (*See* ECF No. 146 at 40.) However, this declaration does not provide any argument or medical evidence that Fitzgerald suffered any further injury because of the alleged delay in treatment. Further, Fitzgerald's medical records indicate he no longer has Hep-C and there is no evidence of cirrhosis or other medical conditions because of any alleged delayed treatment. It appears Fitzgerald's main contention regarding his Hep-C treatment was that he should have been provided Interferon treatment at an earlier date, but to the extent Fitzgerald argues the treatment he ultimately received was unacceptable, a difference of opinion between an inmate and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344.

///

With respect to his neck/back pain and his assertion that he is entitled to damages for an alleged denial of a neurosurgeon consult or surgery, he again has not come forward with evidence supporting his assertion that surgery was warranted at the time he initiated this lawsuit or shown that the more conservative treatment he received—observation, stretching/exercise, and pain management through IBUs—was inappropriate given the physical examinations and x-rays conducted. The Court notes that as of March 7, 2022, Fitzgerald has been approved for back surgery, (*See* ECF No. 146 at 46), but Fitzgerald's medical records relevant to the time of the complaint do not indicate surgery was warranted and Fitzgerald has not come forward with evidence showing that the more conservative treatment he was provided was "medically unacceptable under the circumstances" or was chosen "in conscious disregard of an excessive risk" to his health. *Toguchi*, 391 F.3d at 1058. Again, to the extent Fitzgerald argues the treatment he received was unacceptable, a difference of opinion between an inmate and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344.

Therefore, Fitzgerald has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744. Moreover, to the extent that Fitzgerald's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Fitzgerald has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Fitzgerald fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Fitzgerald has only shown that he disagrees between alternative courses of treatment, such as being

1   given drug intervention treatment as opposed to having his Hep-C monitored for

2   progression or surgery instead of more conservative treatment for his neck/back issues.

3          Based on the above, the Court recommends that Defendants' motion for summary

4   judgment as to the Eighth Amendment deliberate indifference claims be granted.[4]

5          **B.     Fourteenth Amendment – Equal Protection**

6          Fitzgerald's equal protection claim is based on allegations that some NDOC

7   inmates at various stages of Hep-C have been treated for their hepatitis, but Fitzgerald

8   and inmates at prisons where he has been housed have not been treated. (ECF No. 14

9   at 8–9.)

10         "The Equal Protection Clause requires the State to treat all similarly situated

11  people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of

12  Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "In the prison context,

13  however, even fundamental rights such as the right to equal protection are judged by a

14  standard of reasonableness—specifically, whether the actions of prison officials are

15  'reasonably related to legitimate penological reason.'" *Walker v. Gomez*, 370 F.3d 969,

16  974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Jordan v. Gardner*,

17  986 F.2d 1521, 1530 (9th Cir. 1993).)

18         The preliminary inquiry in an equal protection claim is identifying the plaintiff's

19  relevant class, which is "comprised of similarly situated persons so that the factor

20  motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d

21  1021, 1030 (9th Cir. 2013) (internal quotation omitted). Then, "a plaintiff must show that

22  the defendant acted with an intent or purpose to discriminate against him based upon his

23  membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.

24  2003). Because the claim requires proof of intentional discrimination, "[m]ere indifference"

25  to the unequal effects on a particular class does not establish discriminatory intent.

26  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

27  _____
    [4]      The Court does not address Defendants' personal participation or qualified
28  immunity arguments because the Court finds that Fitzgerald's constitutional claims fail on
    the merits.

1   Defendants have presented evidence regarding NDOC's Hep-C policy (ECF Nos.

2   103-1, 103-11), and have also submitted declarations from several defendants stating

3   they "never let prejudices or outside matters" influence their decision to make medical

4   referrals to the URP. (*See* ECF Nos. 103-8, 103-10.) Fitzgerald has not presented any

5   argument or evidence to the contrary and has not presented any argument or evidence

6   showing any defendants acted with an intent or purpose to discriminate against him based

7   upon his membership in a protected class. *See Serrano*, 345 F.3d at 1082. Thus,

8   Fitzgerald cannot show intentional discrimination and his equal protection claim should

9   be dismissed.

10   Based on the above, the Court recommends Defendants' motion for summary

11   judgment be granted as to the equal protection claim.

12   **C.    MISCELLANEOUS MOTIONS**

13   Fitzgerald also filed a motion for preliminary injunction, (ECF No. 128), a motion

14   for substitution of parties, (ECF No. 131), and a cross-motion for summary judgment,

15   (ECF No. 149).

16   Based on the Court's recommendation that Defendants' motion for summary

17   judgment be granted, the Court recommends that the motion for preliminary injunction,

18   (ECF No. 128), and motion for substitution of parties, (ECF No. 131), be denied as moot.

19   As to Fitzgerald's cross-motion for summary judgment, the Scheduling Order in this case

20   (which was extended on multiple occasions) set the dispositive motion deadline for

21   January 29, 2022. (ECF No. 91.) Fitzgerald's cross-motion was filed on May 9, 2022, well

22   after the dispositive motion deadline. (ECF No. 149.) Further, Fitzgerald already filed a

23   response and opposition to Defendants' motion for summary judgment, which the Court

24   considered in rendering the above recommendation. (ECF No. 146.) Accordingly, the

25   Court recommends that Fitzgerald's cross-motion for summary judgment, (ECF No. 149),

26   be denied as untimely filed.

27   ///

28   ///

**IV.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 103), be granted, Fitzgerald's motions for preliminary injunction and for substitution of parties, (ECF Nos. 128, 131), be denied as moot, and Fitzgerald's cross-motion for summary judgment, (ECF No. 149), be denied as untimely.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 103), be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Fitzgerald's motions for preliminary injunction and for substitution of parties, (ECF Nos. 128, 131), be **DENIED as moot**,

**IT IS FURTHER RECOMMENDED** that Fitzgerald's cross-motion for summary judgment, (ECF No. 149), be **DENIED as untimely**; and

I**T IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: _ June 2, 2022 _.

**UNITED STATES MAGISTRATE JUDGE**